UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

VICTOR MARTINEZ GUERRA,

                Petitioner,              Case No. 1:25-cv-1341

v.                             Honorable Jane M. Beckering

KRISTI NOEM et al.,

                Respondents.

_____/

## OPINION

Petitioner Victor Martinez Guerra initiated this action on November 3, 2025, by filing a counseled combined petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for emergency injunctive relief. (§ 2241 Pet., ECF No. 1.) Petitioner is presently detained by the United States Immigration and Customs Enforcement (ICE) at the North Lake Processing Center (North Lake) in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention and asks the Court for the following relief: to accept jurisdiction over this action; to declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act; to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner or ordering Respondents to schedule a bond hearing for Petitioner within five (5) days and accept jurisdiction to issue a bond order; and to award attorneys' fees and costs for this action. (§ 2241 Pet., ECF No. 1, PageID.17–18.)

In an Order (ECF No. 3) entered on November 5, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested

by Petitioner should not be granted. Respondents filed their response (ECF No. 4), and Petitioner filed his reply (ECF No. 5), on November 10, 2025. For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Factual Background

Petitioner is a native and citizen of Mexico. (Courtney Decl. ¶ 4, ECF No. 4-1, PageID.51.) Respondents represent that Petitioner "entered the United States at an unknown date, time, and place without being inspected and admitted or paroled by immigration officials." (*Id.*) Respondents aver that on June 17, 2004, United States Border Patrol (USBP) agents encountered Petitioner near Nogales, Arizona, "after [Petitioner] unlawfully entered the United States, and he was granted a voluntary return to Mexico."[1] (*Id.* ¶ 5.) Petitioner represents that he "last entered the United States in 2004 and has remained continuously ever since." (§ 2241 Pet., ECF No. 1, PageID.4.)

On October 30, 2025, USBP agents encountered Petitioner in Wheeling, Illinois, "during an immigration enforcement action." (Courtney Decl. ¶ 6, ECF No. 4-1, PageID.52.) Petitioner was detained without bond pursuant to § 235 of the Immigration and Nationality Act (INA) because he is "an applicant for admission to the United States seeking admission and he is not clearly and beyond doubt entitled to admission." (*Id.* ¶ 7.)

On October 31, 2025, ICE issued Petitioner a Form I-862, Notice to Appear (NTA), charging him with inadmissibility under § 212(a)(6)(A)(i) of the INA "because he is an immigrant who is present in the United States without having been admitted or paroled, or who arrived at a

---

[1] "A voluntary return occurs when immigration officials encounter and fingerprint an individual who is present unlawfully in the United States, but allow[] them to voluntarily return to their native country without placing them into removal proceedings or issuing a removal order." (Courtney Decl. ¶ 5, ECF No. 4-1, PageID.52.) Respondents indicate that a voluntary return "is an informal process." (*Id.*)

time or place not designated by the Attorney General." (*Id.* ¶ 8.) Petitioner was also charged with inadmissibility under INA § 212(a)(7)(A)(i) "for not having valid travel or immigration documents." (*Id.*) ICE filed the NTA with the Detroit Immigration Court to commence removal proceedings. (*Id.*, PageID.53.) Petitioner "is currently in removal proceedings on the detained docket before the Detroit Immigration Court." (*Id.* ¶ 9.) He is scheduled to appear for a master calendar hearing on December 17, 2025. (*Id.*) Petitioner has not requested a bond hearing. (*Id.*)

## II.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration related matters. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    Jurisdiction

Respondents contend that three provisions of the INA divest this Court of jurisdiction over Petitioner's claim for habeas relief: 8 U.S.C. § 1252(e)(3), 8 U.S.C. § 1252(g), and 8 U.S.C. § 1252(b)(9). (ECF No. 4, PageID.24–29.) Respondents first argue that 8 U.S.C. § 1252(e)(3) deprives the Court of "jurisdiction, including habeas corpus jurisdiction, over Petitioner's challenge to detention of noncitizens under § 1225(b)(2)." (*Id.*, PageID.24.) According to Respondents, § 1252(e)(3) provides the United States District Court for the District of Columbia with exclusive authority to review challenges to regulations and policies issued to implement § 1225(b), and maintain that, in this action, Petitioner seeks judicial review of a written policy or guideline implementing § 1225(b). (*Id.*, PageID.24–25.)

Second, Respondents also argue that this Court lacks jurisdiction under § 1252(g), which bars jurisdiction over "*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien." (*Id.*, PageID.25 (quoting § 1252(g)) (emphasis in Response).)

Finally, Respondents claim that § 1252(b)(9) strips this Court of jurisdiction because it provides that the Court of Appeals has exclusive jurisdiction over the "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States." (ECF No. 4, PageID.28 (quoting § 1252(b)(9)).)

Therefore, the initial question here is whether the Court may exercise jurisdiction over Petitioner's claims. In his reply, Petitioner contends that none of these three statutes deprive the Court of jurisdiction because he "does not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, and he is not challenging a final order of removal." (ECF No. 5, PageID.54.) For the following reasons, the Court agrees with Petitioner and finds that § 1252(e)(3), § 1252(g), and § 1252(b)(9) do not preclude the Court's review of Petitioner's § 2241 petition.

### A.    Common Law Scope of Habeas Review

The United States government is a "carefully crafted system of checked and balanced power within each Branch" that serves as the "greatest security against tyranny —the accumulation of excessive authority in a single Branch." *Mistretta v. United States*, 488 U.S. 361, 381 (1989). In keeping with this core principle, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). This includes in the course of immigration proceedings.

4

Before and after the enactment in 1875 of the first statute regulating immigration, 18 Stat. 477, [federal habeas corpus] jurisdiction was regularly invoked on behalf of noncitizens, particularly in the immigration context.... In case after case, courts answered questions of law in habeas corpus proceedings brought by aliens challenging Executive interpretations of the immigration laws.

*Id.* at 305–07 (alteration in original). *See also, e.g., Demore v. Kim*, 538 U.S. 510, 517 (2003) (holding that § 1226(e) of the INA limiting judicial review of the Attorney General's discretionary judgments regarding detention and release did not preclude the Court of jurisdiction to grant habeas relief in the context of a challenge to detention under the no-bail provision of the INA); *Zadvydas*, 533 U.S. at 688 (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" under the INA).

Against this historical backdrop of the use of habeas corpus to review unlawful detention in immigration proceedings, Respondents argue that this case falls outside of the scope of the writ under common law. They contend that Petitioner's claims for relief challenge the policies used to implement § 1225(b) and stem from the commencement of removal proceedings, and that the scope of habeas review in cases such as Petitioner's has been limited by Congress under § 1252(e)(3) and § 1252(g).

**B.    Section 1252(e)(3)**

Section 1252(e)(3), titled "Challenges on validity of the system," provides in subsection (A) that "judicial review of determinations under [§] 1225(b) . . . is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of— (i) whether such section, or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is . . . in violation of law." 8 U.S.C. § 1252(e)(3).

Here, Petitioner is not challenging the implementation of § 1225(b)(2), nor does he challenge the lawfulness of any particular statute, regulation, or written policy or procedure. In fact, Petitioner does not appear to dispute that § 1225(b)(2) requires detention of noncitizens detained under that subsection. Rather, Petitioner asserts that Respondents lack statutory authority to detain him under § 1225(b)(2) because that statute does not apply to the circumstances at hand. Petitioner argues that § 1226(a) provides the statutory authority for his detention. Accordingly, § 1252(e)(3) does not deprive this Court of jurisdiction.

### C.    Section 1252(g)

Enacted in 1996, § 1252 governs "judicial review" of orders of removal. Subsection (g) provides:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This statute limits—but does not wholly divest—courts of jurisdiction to grant habeas relief in the context of immigration-related proceedings.

The Supreme Court, in *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999), first examined the scope of § 1252(g) in an action seeking declaratory and injunctive relief against the Attorney General and others related to deportation actions. *Id.* at 473–74. Finding that the newly enacted § 1252 divested the Court of jurisdiction to hear the challenges posed by the respondents, the Court nonetheless rejected the approach advanced by Respondents here. It cautioned that § 1252 does not cover "the universe of deportation claims," but is much narrower: "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.*

at 482. The Court explained that it would be "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*; *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) (reaffirming the "narrow" nature of § 1252(g), and holding that § 1252(g) did not bar an action challenging the rescission of Deferred Action for Childhood Arrivals (DACA), which was "not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order.").

Later, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), a majority of the Court explicitly rejected the notion that a habeas challenge to continued detention falls within the scope of § 1252(g): "The concurrence contends that 'detention is an "action taken . . . to remove" an alien' and that therefore 'even the narrowest reading of "arising from" must cover' the claims raised by respondents. We do not follow this logic." *Id.* at 295 n.3 (quoting Thomas, J., concurring in part and concurring in judgment). And when faced with this issue, lower courts have overwhelmingly agreed that courts have jurisdiction to entertain habeas challenges to the legality of a noncitizen's detention. *See, e.g., Eliseo v. Olson*, No. 25-3381, 2025 WL 2886729, at *5 (D. Minn. Oct. 8, 2025) (citing, *inter alia*, *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000); *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025); *Kostak v. Trump*, No. 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428, 2025 WL 2430025, at 5–7 (D. Md. Aug. 24, 2025); *Espinoza, et al., v. Kaiser, et al.*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2675785, at *9 (E.D. Cal. Sep. 18, 2025); *See also Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding that § 1252(g) does not bar a habeas claim of "illegal detention" as it is "plainly collateral to ICE's prosecutorial decision to execute Kong's removal"); *Mustata v. U.S. Dep't of Just.*, 179 F.3d 1017, 1019 (6th Cir. 1999)

7

("We conclude that 8 U.S.C. § 1252(g) does not eliminate jurisdiction over the Mustatas' 28 U.S.C. § 2241 habeas petition."); *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 304 (5th Cir. 1999) (holding that § 1252(g) does not bar a habeas review and noting that the Fourth, Sixth, Eighth, Tenth, and Eleventh Circuits have all held the same).

Here too, Petitioner's action requesting a writ of habeas corpus ordering Respondents to release Petitioner on bond does not seek the review of a discretionary decision to "commence proceedings," "adjudicate" a case, or "execute" a removal order. Petitioner seeks a writ of habeas corpus to challenge his continued detention without bond or "constitutionally adequate process" pursuant to the mandatory detention policy. This action falls outside of the narrow scope of § 1252(g) and within this Court's jurisdiction.

### D.    Section 1252(b)(9)

Under INA § 1252(b)(9), the Courts of Appeals are the exclusive fora for judicial review "of all questions of law . . . including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Yet, this is not a matter "arising from [an] action taken . . . to remove an alien from the United States." Respondents' "expansive interpretation of § 1252(b)(9)" was rejected by the Supreme Court in *Jennings. See Jennings*, 583 U.S. at 293. There, the Supreme Court examined § 1252(b)(9) and concluded that "questions of law" as to whether "certain statutory provisions require detention without a bond hearing" do not "arise from" the decision to remove an alien from the country. *Id.* at 294. Accordingly, *Jennings* explicitly forecloses the Government's reading of this statute. Here, Petitioner is challenging his detention under § 1225 and his entitlement to a bond hearing. Under *Jennings*, § 1252(b)(9) does not divest this Court of its jurisdiction to consider his habeas petition.

## IV.    Exhaustion

Respondents next contend that this Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies. (ECF No. 4, PageID.29.) Specifically, Respondents argue that Petitioner has yet to request a bond hearing, and that if he were to request such a hearing and "the immigration court decline to grant his bond, he would have the right to appeal any unfavorable decision to the Board of Immigration Appeals (BIA)." (*Id.*) Petitioner, however, contends that exhaustion is not required and should be excused because "requesting a bond hearing before an Immigration Judge and review by the [BIA] on the sole basis of no jurisdiction would be futile at this juncture." (ECF No. 5, PageID.57.) For the following reasons, the Court agrees with Petitioner.

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (internal quotation marks omitted). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *See Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983)," to determine whether prudential

exhaustion should be required. *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Thus,

> [c]ourts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by and is not required to give deference to any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner here, generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that

conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all aliens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). It is simply unlikely that any administrative review by the BIA would lead the Government to change its position thereby obviating the need for judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4. A court may choose to rule upon the merits of the issues presented when the "legal question is fit for resolution and delay means hardship." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, there is no question that delay would result in hardship to Petitioner. First, as noted above, Petitioner would need to request a bond redetermination hearing before an immigration judge. There is no evidence in the record as to how long Petitioner would have to wait until such a hearing, if any, were scheduled. Petitioner's request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Then, Petitioner would have the opportunity to appeal any unfavorable decision to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239. 1245 (W.D. Wash. 2025).

Moreover, as set forth above, Petitioner is scheduled to appear before the immigration court for a master calendar hearing on December 17, 2025. However, the record is silent as to when Petitioner will be scheduled for his final merits hearing. It is possible that a determination from the BIA as to whether Petitioner is entitled to bond would come before any final decision regarding removal. Nevertheless, it is unmistakable that "depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## V.    Merits Discussion

### A.    Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (§ 2241 Pet., ECF No. 1, PageID.17.) According to Petitioner, noncitizens who "previously entered the country and are now residing in the United States prior to being apprehended and placed in removal proceedings" are detained pursuant to 8 U.S.C. § 1226(a). (*Id.*) Respondents, however, contend that Petitioner "unambiguously meets every element for detention under § 1225(b)(2)," and that "even if the text of § 1225(b)(2) were ambiguous, its structure and history support the agency's interpretation of the statute." (ECF No. 4, PageID.32.) To address the parties' arguments, the Court must examine the two primary statutory provisions at play: 8 U.S.C. § 1225 and § 1226.

Section 1225(b)(2)(a) provides that

in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title

8 U.S.C. § 1225(b)(2)(a).

Section 1226(a), on the other hand, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. 281, 289 (2018). It states:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c)[2] and pending such decision, the Attorney General

(1) may continue to detain the arrested alien; and

(2) may release the alien on

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole . . .

8 U.S.C. § 1226(a).

Both provisions govern the detention of noncitizens pending removal proceedings; the critical difference is that § 1225 provides for mandatory detention, while § 1226 allows for the release of the noncitizen on conditional parole or bond. For the following reasons, the Court finds that Petitioner's detention is governed by § 1226.

"A statute should be construed so that effect is given to all its provisions." *Corey v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022 (noting how courts "must give effect to the clear meaning of statutes as written"). When engaging

---

[2] Subsection (c) refers to the "[d]etention of criminal aliens," which does not apply here. *See* 8 U.S.C. § 1226(c).

13

in statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). However, ambiguity is not determined by examining provisions in isolation. "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King*, 576 U.S. at 486 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enter.*, 603 U.S. at 400. Examining the statute as a whole, in line with the guiding principles of statutory construction, this Court agrees with the numerous other courts in the country that have concluded that Respondents' interpretation of the statute is too broad.

Respondents contend that Petitioner is detained pursuant to § 1225 because he is an applicant for admission. (ECF No. 4, PageID.33–34.) As explained above, § 1225 defines an "applicant for admission" as any noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). Therefore, based on a plain reading of this limited phrase, any noncitizen who has not been legally allowed to enter is treated under § 1225 as an "applicant for admission."

However, although the terms of § 1225 may seem unambiguous when viewed in isolation, context matters. *Yates v. United States*, 574 U.S. 528, 537 (2015) (emphasizing the importance of context even when a statutory term is unambiguous). As noted above, § 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be

14

admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A) (emphasis added). Respondents' reading of § 1225 would render the remaining qualifier of "an alien seeking admission" entirely unnecessary. "That is, rather than stating that mandatory detention is required for any 'applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted,' the statute would instead provide for mandatory detention for any 'applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted.'" *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)). "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Given Congress' decision to use different terms— "applicant for admission" and "alien seeking admission"—the Court will presume that Congress intended to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings.") Therefore, in examining the text of § 1225, the Court must also examine the meaning of the phrase: seeking admission. The question remains: is a noncitizen who already entered the United States unlawfully but seeks to stay "seeking admission"?

The plain, ordinary meaning of "seeking" means "asking for" or *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited Nov. 10, 2025). It is a present participle, which "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025) The term

"admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). However, "entry," is not defined in the INA. *See generally id.* § 1101. The dictionary defines "entry" as "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited Nov. 10, 2025). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre,* 14 I & N Dec. 467, 468 (BIA 1973)).

However, Petitioner is not actively seeking to lawfully cross into the territorial limits of the United States because he already *entered* the United States 21 years ago, in 2004. As *Lopez Benitez* noted:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for more than two years.

2025 WL 2371588, at *7; *see also Lopez-Campos*, —— F. Supp. 3d ——, 2025 WL 2496379, at *6 ("[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

Indeed, § 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." A title such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring in judgment). Congress' decision to include the word "arriving," as well

16

as the decision to include references to methods of physical arrival, such as "stowaways" and as "crewmen" evidences an intent to address noncitizens coming to the United States—whether on one side of the border or the other—and who are presently "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing to *Dubin v. United States*, 599 U.S. 110, 118 (2023)). The Supreme Court has recognized this distinction: that § 1225 applies to noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and § 1226 applies to noncitizens who successfully have entered the United States—whether legally or illegally. *See Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] *seeking admission into* the country under §§ 1225(b)(1) and (b)(2). It also authorizes the [g]overnment to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under § 1226(a) and (c)." (emphasis added)).

Furthermore, Respondents' interpretation urges this Court to turn a blind eye to the remainder of the statutory scheme. Courts are instructed to "construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2105). Whereas § 1225 governs the treatment of "arriving aliens," § 1226 is much broader, referring to all other aliens not lawfully present but not arriving. To read § 1226 otherwise would ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid. *See TRW Inc.*, 534 U.S. at 31.

Just this year, Congress enacted the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025), which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), *and* who

17

have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Notably, § 1182(a)(6)(A) refers to "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General . . .", in other words, someone like Petitioner. If all individuals like Petitioner, "present in the United States without being admitted or paroled," were already subject to mandatory detention under § 1225, then there would have been no need for Congress to amend the INA to provide for mandatory detention of individuals who were "present in the United States without being admitted or paroled" *and* who were arrested, charged with, or committed certain crimes. If the Court accepted Respondents' interpretation of §§ 1225 and 1226, the Court would be nullifying Congress's intent and rendering § 1226(c)(1)(E) entirely superfluous. *See Corey*, 556 U.S. at 314 ("A statute should be construed so that effect is given to all its provisions.")

In sum, the Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States for many years and were already within the United States when apprehended and arrested. The reading of the pertinent statutes clearly supports this conclusion. This Court has recently reached the same conclusion in several other

habeas corpus matter filed by ICE detainees.[3] Moreover, this Court is far from the first federal district court to reach this conclusion.[4]

## B.    Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. (§ 2241 Pet., ECF No. 1, PageID.15.) According to Petitioner, his detention is unjustified because "Respondents have not demonstrated that Petitioner needs to be detained." (*Id.*) Petitioner

---

[3] *See Hernandez Garcia v. Raycraft*, No. 1:25-cv-1281, 2025 WL 3122800, at *5 (W.D. Mich. Nov. 7, 2025); *Rodriguez Serrano v. Noem*, No. 1:25-cv-1320, 2025 WL 3122825, at *5–6 (W.D. Mich. Nov. 7, 2025); *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025).

[4] *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *8; *see also Rodriguez*, 779 F. Supp. 3d at 1256–61; *Singh v. Lewis*, No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *3–5 (W.D. Ky. Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7–12 (W.D. Tex. Sept. 22, 2025); *Campos Leon v. Forestal*, 1:25-cv-1774-SEB-MJD, 2025 WL 2694763, at *2–5 (S.D. Ind. Sept. 22, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *5–9 (E.D. Va. Sept. 19, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-2677-CNS, 2025 WL 2652880, at *2–3 (D. Colo. Sept. 16, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136, at *2–4 (W.D. La. Aug. 27, 2025); *Romero v. Hyde*, No. 1:25-cv-11631-BEM, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411, at *9–16 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *6–9 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *3–9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 2:25-cv-02157-DLR, 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *6–8 (D. Mass. July 7, 2025). This is just a representative sampling of the various federal district courts that have reached the same conclusion as this Court. In his reply, Petitioner has provided "an overall sample of recent circuits that have all disagreed with Respondents' interpretation and have subsequently granted relief to habeas petitions." (ECF No. 5, PageID.62–68.)

avers further that "[b]y issuing its decision in *Matter of Yajure Hurtado*, the BIA has taken nearly all bond authority away from Immigration Judges." (*Id.*, PageID.16.) Respondents, however, contend that Petitioner "admits that he entered the country without inspection and evaded detection for more than two decades." (ECF No. 4, PageID.47.) Respondents also argue that Petitioner is not due any further process because he "has received notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, may request bond, has the right to appeal the denial of any request for bond, and has been detained by ICE for less than two weeks." (*Id.*)

The Supreme Court has held that "[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 682. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Id.* at 690. The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes noncitizens, like Petitioner. *See id.*; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 236837, at *4 (6th Cir. Jan. 18, 2023).

If this Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), then the Government's due process argument might carry more weight. However, as set forth above, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute explicitly allows the Attorney General to continue to detain the arrested

noncitizen or release the noncitizen with either "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1), (2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the *Matthews v. Eldridge* test in the context of immigration). *Matthews v. Eldridge* requires a court to consider the following three factors: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi*, 542 U.S. at 529. The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Respondents do not claim that the conditions of Petitioner's confinement at North Lake differ in any material way from criminal incarceration. Petitioner, through counsel, represents that "his three US citizen children, one child with [Deferred Action for Childhood Arrivals (DACA) status], his wife, and other family members live in the United States." (§ 2241 Pet., ECF No. 1, PageID.4.) Petitioner avers that his detention "prohibits him for being able to financial provide for his family,

and inhibits his removal defense in many ways." (*Id.*, PageID.5.) Now detained away from his family, Petitioner is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 2025 WL 1459154 at *7. Therefore, the "private interest" factor strongly weighs in favor of Petitioner.

Likewise, the second *Mathews* factor weigh in Petitioner's favor. An individualized bond hearing ensures that an immigration judge can assess whether Petitioner poses a flight risk or a danger to the community, reducing the risk that Petitioner will suffer an "erroneous deprivation" of his rights. *See Lopez-Campos*, 2025 WL 2496379, at *9.

Lastly, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025). However, given the record available to the Court, Respondents have not established a significant interest in potentially "detaining someone who [could convince] a neutral adjudicator, following a hearing and assessment of the evidence, that his ongoing detention is not warranted." *See id.* Furthermore, Respondents have not established that an individualized hearing would pose "administrative or financial costs" in this case—"[t]o the contrary," Respondents' position "requires the government to continue funding and overseeing [Petitioner's] detention[.]" *See id.*

In sum, the Court's balancing of the *Matthews v. Eldridge* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

## VI.    Proper Respondents

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Ct. of Ky.*, 410 U.S. 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has "conclude[d] that a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named Robert Lynch, the ICE Field Office Director, and Kristi Noem, Secretary of the Department of Homeland Security, as Respondents. Respondents request that Secretary Noem be dismissed because the Detroit ICE Field Office Director is the only proper respondent. (ECF No. 4, PageID.47.)

In *Roman*, the Sixth Circuit stated that while it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court went on to note:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas[ v. Olsen]*, 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft,* 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General.");

23

> Rosenbloom, *supra,* at 549. In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[ *v. Comm'r*], [No. 00 CIV. 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, the Court declines to enter an order directing Respondents not to transfer Petitioner out of the Western District of Michigan during the pendency of these proceedings, especially given that these proceedings will conclude with the entry of this Opinion and accompanying Hudgment. However, in order to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and directive that Petitioner receive a bond hearing or, alternatively, be released in the event that Petitioner is transferred out of the Western District of Michigan, the Court will not dismiss Secretary Noem as a Respondent to these proceedings.

## VII.    Summary

For the reasons set forth above, the Court disagrees with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A) and, therefore, that Petitioner is subject to mandatory detention. Instead, the Court concludes that Petitioner's detention is governed by § 1226(a) and, therefore, that Petitioner is entitled to a discretionary and individualized bond determination as set forth in that statute. Likewise, the Court finds that because Petitioner's detention is governed by § 1226(a), his current detention under § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

As the Eastern District of Michigan recently stated, "[t]he recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which

laws we feel like following when they best suit our interests." *Lopez-Campos*, 2025 WL 2496379, at *10. While Petitioner is entitled to a bond hearing, the Court notes that the immigration judge is in a better position to evaluate whether Petitioner poses a flight risk and a danger to the community. Accordingly, the Court leaves to the immigration judge's sound discretion a determination on that issue.

### <u>Conclusion</u>

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's Opinion and Judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's Opinion and accompanying Judgment to certify compliance with this Opinion. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

Dated:    November 17, 2025                    /s/ Jane M. Beckering
                                               Jane M. Beckering
                                               United States District Judge